THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ABRAM PREISKEL, CHARLES J. MONKS, EDWARD BOYKO AND OWEN J. CUNNINGHAM, PLAINTIFFS IN ERROR.

Argued May 7, 1935—Decided October 3, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and DONGES.

For the plaintiffs in error, *Peter J. McGinnis, Merritt Lane, Robert H. McCarter* and *R. Lewis Kennedy.*

For the defendant in error, *James D. Carpenter, Jr.*

LLOYD, J. The defendants below were respectively a director of public safety, a chief of police and captains of police of the city of Passaic, and were indicted by the Passaic county grand jury for non-feasance in office in that they failed to enforce the criminal laws respecting disorderly houses and gambling places. They were convicted and are plaintiffs in error in this court.

While different duties and different degrees of authority may have existed among the various officials, these all con-

verged to establish an obligation on the defendants to enforce the criminal laws and penal ordinances of the city. This responsibility was common to them all and if dereliction in this respect as charged in the indictment is established by the proofs, the defendants were guilty of non-feasance in office.

Numerous grounds for reversal are urged, but we find it necessary to discuss but two, but upon these we think a reversal must result.

The first of these is that during the progress of the trial a card bearing the printed and written name of Commissioner Preiskel was offered in evidence. The card, enclosed in an envelope of a florist in Passaic, was found in a table drawer of the apartment of one Ben Golden when a raid was made on the apartment by state police. Golden's name figured prominently during the trial in connection with the numbers gambling game. The card contained in writing on its face an extravagant expression of appreciation of the recipient's spirit and generosity and wishing him wealth, success and happiness, and purported to have been signed by Preiskel. When the raid itself was first attempted to be proved the testimony was rejected by the court as outside the limits of the time alleged in the indictment, but later, with misgiving, the same proof was received together with the proof of the finding of the card. It was admitted that the possession of the card by Golden could not be traced to Preiskey, and it was proved that the written words of adulation and signature thereto were not by his hand. Under such circumstances the card was clearly inadmissible. Such evidence as there was not only failed to establish the card as coming from Preiskel but clearly indicated a different source. That it was calculated to do great damage to this defendant is apparent. To admit the card as a legitimate piece of evidence against Preiskel and have it go out with the jury as an exhibit constituted a lasting object for their deliberate consideration. It is difficult to measure its effect, showing as it did an apparent close relationship between the writer and Golden, the latter a figure in the city's underworld.

The other and remaining ground of appeal which we regard as vital in the cause is the refusal of the court to charge as to

the duty and power of the officers to make arrest. This was presented in two requests for charge in behalf of the defendants Boyko and Cunningham, captains of police, and were as follows:

"A policeman, by reason of his official position, cannot arrest people at his pleasure without a warrant, because the policeman suspected that a person was a *gangster* or undesirable citizen. There can be no arrest without a warrant on mere suspicion or hearsay in case of a misdemeanor. In case of an ordinary misdemeanor a police officer cannot arrest the offender without a warrant unless he is present at the time of the offense.

"In the absence of some special statutory authority a police officer cannot arrest without a warrant on mere information that a person is a *gangster,* hoodlum or undesirable person."

The substance of these requests was that the court define the powers of these officers with respect to making arrest in cases of misdemeanor committed out of the presence of the officers. Instruction to the jury on the point was requested verbally by counsel during the taking of testimony, but denied by the court as out of time. Later the formal requests were presented and denied.

Mr. Justice Blackstone, in his commentaries, volume 4, page 292, sets forth the limit of authority in such case. "The constable * * * hath great original and inherent authority with regard to arrests. He may, without warrant, arrest any one for a break of the peace committed in his view, * * * and in cases of felony actually committed, or a dangerous wounding, whereby felony is likely to ensue, he may, upon a reasonable suspicion, arrest the felon."

In *Webb* v. *State,* 51 *N. J. L.* 189; 17 *Atl. Rep.* 113, Chief Justice Beasley declared that, "it has always been in the common law the rule that a constable or other peace officer could not take the offender unless in some instances where the offense had been committed in his presence. This is the principle that has also prevailed in this state." The rule seems also to be one of general observance throughout the states of the union. In 5 *Corp. Jur.* 395, it is said that "it has always been the rule that except in cases where the public security

has demanded it, arrest without a warrant has been deemed to be unlawful," citing numerous cases.

We think the defendants were entitled to have the jury informed of the power of these officers to make arrest, and assuredly the second request was an accurate statement of the law. It was of vital importance that if they were charged with neglect of duty in making arrests and suppressing crime that the jury should know just what that duty was, and when the court refused to so advise, as requested, as to the limit of power, a manifest wrong was done.

It is urged, however, that this ruling cannot avail the defendants Preiskel and Monks inasmuch as the requests were presented by Boyko and Cunningham, but the ruling is assigned for error by all of the appellants, and we think is available for all. All of the defendants were jointly indicted and jointly tried. The requests, though presented by Boyko and Cunningham were nevertheless applicable to all, and the ruling available to all. To hold otherwise would require a reversal as to Boyko and Cunningham on the last named ground and as to Preiskel on the error in admitting the card, and deprive Monks of the benefit of the erroneous ruling. Of it we think he also is entitled to complain, and we are not prepared to make the discrimination asked.

The judgment is reversed as to all of the appellants and a *venire de novo* awarded.